IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OBLIO TELECOM, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-08-CV-0279-L |
| | § | |
| ZUBER PATEL, ET AL. | § | |
| | § | |
| Defendants. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Defendants Hawaii Global Exchange, Inc. ("HGE") and its sister company, Transpac, Inc. ("TTI"), have filed a motion for attorney's fees or, alternatively, for the issuance of a show cause order in this civil RICO action that was dismissed by the court at the pleading stage. Defendant Zuber Patel ("Patel") has filed a separate motion for attorney's fees. For the reasons stated herein, both motions should be denied.

I.

On February 15, 2008, Plaintiff Oblio Telecom, Inc. ("Oblio"), a company that markets prepaid telephone products, sued one of its employees, Patel, and various distributors of prepaid phone cards, including HGE and TTI, for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and fraud and conspiracy under Texas law. In its complaint, plaintiff alleged that Patel sold Oblio phone cards to the other defendants, but added more "talk time minutes" than shown on the face value of the cards, applied unauthorized discounts to the invoices, and told defendants they did not have to pay Oblio for the invoiced products. (*See* Plf. Compl. at 5-6, ¶ 19(a)-(j)). This practice is commonly referred to as "making a run on a phone

card provider." (*Id.* at 4-5, ¶ 19). Plaintiff further alleged that Patel and defendants engaged in a "pattern of racketeering activity" in violation of federal and state laws, including the federal mail fraud and wire fraud statutes, (*see id.* at 7, ¶¶ 21-22), and that the purpose of the scheme was to make Oblio insolvent so defendants could escape repayment of their debts. (*Id.* at 5-6, ¶ 19(f)).

After plaintiff effected service on the defendants, HGE, a Hawaii corporation, and TTI, a California corporation, filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction and a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief could be granted. Patel also filed a Rule 12(b)(6) motion. HGE and TTI subsequently withdrew their jurisdictional challenges,[1] and the district court denied the Rule 12(b)(6) motions without prejudice so plaintiff could replead its RICO, fraud, and conspiracy claims. *See Oblio Telecom, Inc. v. Patel*, ___ F.Supp.2d ___, 2008 WL 4936488 at *7 (N.D. Tex. Nov. 18, 2008). As directed by the court, plaintiff filed an amended complaint asserting the same claims as alleged in its original complaint, but with additional facts. Defendants then renewed their Rule 12(b)(6) motions. On June 10, 2009, the district court dismissed plaintiff's amended complaint for failure to state a RICO claim and for failure to sufficiently allege fraud and conspiracy under Texas law. In its order, the court noted:

- plaintiff failed to adequately plead the existence of a RICO enterprise because there were no allegations that the association between Patel and the other defendants had continuity separate and apart from the short term goal of putting Oblio out of business, or that there was an ascertainable structure separate and apart from achieving the predicate acts;

- plaintiff failed to plead with specificity the predicate acts of mail fraud, wire fraud, and a scheme to defraud as required by Fed. R. Civ. P. 9(b);

---

[1] HGE and TTI withdrew their Rule 12(b)(2) motion after the presiding judge in a related case between the same parties ruled that Texas had jurisdiction over HGE. *See Oblio Telecom, Inc. v. Hawaii Global Exchange, Inc.*, No. 3-08-CV-0120-K, op. at 1 (N.D. Tex. Mar. 24, 2008).

- plaintiff failed to plead with particularity the elements of common law fraud; and

- plaintiff did not plead any facts to support its conspiracy claim.

See *Oblio Telecom, Inc. v. Patel*, No. 3-08-CV-0279-L, 2009 WL 1650481 at *4-6 (N.D. Tex. Jun 10, 2009).

In an attempt to recoup the legal expenses incurred in defending this action, HGE, TTI, and Patel now seek an award of attorney's fees against plaintiff and its counsel, the law firm of Scheef & Stone, LLP ("Sheef & Stone"), pursuant to 28 U.S.C. § 1927 and the court's inherent power to sanction vexatious litigation conduct. As grounds for their motions, defendants contend that plaintiff brought this action in bad faith for the sole purpose of "marketplace propaganda," not to redress legitimate legal grievances, and that Scheef & Stone "uncritically acquiesced" in the filing of this frivolous lawsuit. The motions have been fully briefed by the parties and are ripe for determination.

II.

"As a general rule, litigants must pay their own attorney's fees." *SEC v. Cuban*, No. 3-08-CV-2050-D, 2009 WL 4544178 at *1 (N.D. Tex. Dec. 4, 2009), *quoting Stover v. Hattiesburg Public School Dist.*, 549 F.3d 985, 997 (5th Cir. 2008). Notwithstanding the general prohibition against fee-shifting, courts have limited authority to award attorney's fees to prevailing litigants when the losing party or its attorney acts in bad faith, vexatiously, or for oppressive reasons. Defendants rely on two such grants of authority to support the award of fees in this case -- 28 U.S.C. § 1927 and the court's inherent power.[2]

---

[2] Defendants do not seek Rule 11 sanctions because they failed to comply with the "safe harbor" provision of the statute. *See* FED. R. CIV. P. 11(c)(2) (a motion for sanctions "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service [of the motion]"). Although the court may still award sanctions under 1927 and its inherent powers, there are

A.

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. To impose sanctions under this statute, the court must find that the sanctioned attorney multiplied the proceedings both "unreasonably" and "vexatiously." *Vanderhoff v. Pacheco*, No. 09-30064, 2009 WL 2776607 at *3 (5th Cir. Sept. 2, 2009), *citing Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002). This requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Id., quoting Edwards v. General Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998). Section 1927 only authorizes shifting fees that are associated with "the persistent prosecution of a meritless claim." *Id., quoting Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991). "To shift the entire cost of defense, the claimant must prove, by clear and convincing evidence, that *every facet* of the litigation was patently meritless, . . . and counsel must have lacked a reason to file the suit and must wrongfully have persisted in its prosecution through discovery, pretrial motions, and trial[.]" *Id.* (emphasis in original), *quoting Procter & Gamble*, 280 F.3d at 526. An attorney may not be sanctioned under section 1927 for mere negligence. *Id., citing Baulch v. Johns*, 70 F.3d 813, 817 (5th Cir. 1995). Rather, "there must be a

---

strong public policy reasons against doing so. *See, e.g. Chatham Partners, Inc. v. Fidelity and Deposit Co. of Maryland*, No. 99-CIV-12308 (JSM), 2001 WL 1262960 at *2 (S.D.N.Y. Oct. 19, 2001) ("[G]iven the policy considerations that gave rise to the adoption of Rule 11's safe harbor provision, it seems inappropriate to use 28 U.S.C. § 1927 to do what the Court cannot do under Rule 11."); *Malbrough v. Kilpatrick & Stockton, LLC*, No. 99-1683, 1999 WL 643663 at *1 (E.D. La. Aug. 23, 1999) (using section 1927 to sanction conduct covered by Rule 11 "would undermine the safe harbor provision [ ] by essentially reading it out of the Rule"); D. Hart, *And the Chill Goes On--Federal Civil Rights Plaintiffs Beware: Rule 11 Vis-a-Vis 28 U.S.C. § 1927 and the Court's Inherent Power*, 37 Loy. L.A. L.Rev. 645, 649, 684 (2004) (suggesting that section 1927 and the court's inherent powers should not be used to sidestep the procedural requirements of Rule 11). Because defendants have failed to establish their entitlement to sanctions in any event, the court need not dwell on these policy concerns.

showing of improper motive on the part of an attorney, independent of a showing that the claims pursued were baseless." *Hencinski v. Austin Commercial, L.P.*, No. 3-05-CV-2368-D, 2006 WL 325764 at *2 (N.D. Tex. Feb. 13, 2006), *citing FDIC v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994).

Federal courts also have inherent power to sanction bad faith litigation conduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S.Ct. 2123, 2132-33, 115 L.Ed.2d 27 (1991). "When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions." *Toon v. Wackenhut Corrections Corp.*, 250 F.3d 950, 952 (5th Cir. 2001), *quoting Carroll v. The Jacques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292 (5th Cir. 1997). "Because of the potency of inherent powers and the limited control of their exercise, however, they must be used with great restraint and caution." *Id., quoting Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996). The standard for imposing sanctions using the court's inherent powers is extremely high. *See Goldin v. Bartholow*, 166 F.3d 710, 722-23 (5th Cir. 1999). "A court should invoke its inherent power to award attorney's fees only when it finds that 'fraud has been practiced upon it, or that the very temple of justice has been defiled.'" *Boland Marine & Manufacturing Co. v. Rihner*, 41 F.3d 997, 1005 (5th Cir. 1995), *quoting Chambers*, 111 S.Ct. at 2133.

B.

Judged against these standards, defendants have failed to make the required showing for an award of attorney's fees under section 1927 or the court's inherent powers. In their written submissions, HGE and TTI allege that plaintiff and its attorney brought this litigation "for an improper purpose against completely innocent entities as a business tactic rather than legal reasons[.]" (*See* HGE Mem. Br. at 1). According to these defendants:

> This lawsuit was not filed because of a good faith belief in any merits, and not a shred of merit was ever identified, despite two opportunities to plead. The truth is, Oblio, its parent company, Titan Global Holdings, Inc. ("Titan"), and their principals were trying to pass blame for their own gross misfeasance and malfeasance onto innocent third parties. Extensive discovery in parallel litigation involving Oblio, Titan and its principals has conclusively established that HGE and TTI did not engage in any wrongful conduct and that plaintiffs were well aware of that.

(*Id.*). Although HGE and TTI acknowledge the possibility that Scheef & Stone may have been "dragged into this scheme unwittingly," defendants maintain that counsel had "independent duties as officers of the court" to investigate the validity of plaintiff's claims before suit was filed. (*Id.* at 1 n.1). Patel relies on these same arguments to support his request for attorney's fees. (*See* Patel Mot. at 1).

Other than the conclusory assertions of "bad faith" and "improper purpose," defendants offer nothing to prove their entitlement to attorney's fees. There is no evidence of bad faith, vexatiousness, wantonness, or oppressive conduct on the part of plaintiff or its attorneys. In fact, no evidence has been submitted to the court by any of the parties. Nor have defendants requested an opportunity to conduct discovery to determine whether any such evidence exists.[3] Instead, defendants maintain that "bad faith" can be inferred from the pleadings in this case. (*See* HGE Reply Br. at 2). The court disagrees. The only determination that can be made from the pleadings is that plaintiff failed to state a claim for relief against defendants. That plaintiff did not allege sufficient facts in its original complaint or amended complaint to survive dismissal under Rule 12(b)(6) does not mean that plaintiff or its counsel acted in bad faith, vexatiously, or for oppressive reasons. *See Evanston Insurance Co. v. Tonmar, L.P.*, ___ F.Supp.2d ___, 2009 WL 3711642 at *8 (N.D. Tex.

---

[3] One judge in this district recently allowed discovery in connection with a motion for sanctions to "enable the court to fairly judge some of [defendant's] allegations regarding how the [plaintiff] conducted its investigation." *Cuban*, 2009 WL 4544178 at *3.

Nov. 5, 2009) (refusing to award sanctions under section 1927 after dismissal of complaint at pleading stage).

## **RECOMMENDATION**

HGE's and TTI's motion for attorney's fees or, alternatively, for the issuance of a show cause order [Doc. #73] and Patel's motion for attorney's fees [Doc. #74] should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 22, 2009.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE